```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MENACHEM EZAGUI,

                            Plaintiff,
                                                                  REPORT &
                                                                  RECOMMENDATION
            -against-                                             20-CV-06360-DG-SJB

CITY OF NEW YORK,
POLICE OFFICER MCCANN, SHIELD #14257,

                            Defendants.
----------------------------------------------------------------X
```
**BULSARA, United States Magistrate Judge:**

Plaintiff Menachem Ezagui ("Ezagui") seeks to reopen this case pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. This case was closed on February 5, 2021 after the parties entered into a stipulation dismissing Ezagui's federal claims and remanding the action to state court. Over one year later, Ezagui, represented by new counsel, moved for relief from that judgment, arguing that his former attorney "lacked the authority" to enter into the stipulation on his behalf. The motion to vacate was referred by the Honorable Diane Gujarati to the undersigned. (Order Referring Mot. dated Sept. 20, 2022). For the reasons stated below, the Court respectfully recommends that Ezagui's motion to vacate be denied.

FACTS AND PROCEDURAL HISTORY

Menachem Ezagui first sued the City of New York and Police Officer Dylan McCann, Shield #14257 (together, "Defendants") in Kings County Supreme Court alleging violations of 42 U.S.C. § 1983 and assault and battery arising from injuries he sustained while observing a street protest. (Complaint dated Oct. 25, 2020 ("Compl."), attached as Ex. 1 to Notice of Removal dated Dec. 30, 2020 ("Notice of Removal"), Dkt.

No. 1). Defendants timely removed the case to this Court, on the basis of federal question jurisdiction. (Notice of Removal ¶ 5). Approximately one month later, the parties entered into a joint stipulation dismissing with prejudice Ezagui's federal claims (for violations of § 1983) and remanding the case to state court. (Stipulation of Dismissal dated Feb. 1, 2021, Dkt. No. 8). The agreement provided:

> It is hereby stipulated, consented to and agreed, by and between the attorneys for the parties, pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, that all Federal Causes of Action brought, or that could have been brought, against defendants . . . are hereby dismissed with prejudice by plaintiff in this case and any case to be filed in, or remanded to, state court. The parties agree that this action will be remanded forthwith to the New York Supreme Court, Kings County, for all further proceedings dealing with the Plaintiff's state law claims only. The parties further agree that this stipulation will not be utilized to prohibit plaintiff from alleging any and all applicable state law causes of action and that Plaintiff only renounces his federal causes of action.

(*Id.*). Counsel for Ezagui, David A. Zelman, signed the stipulation on his behalf. (*Id.*). Judge Gujarati issued an order remanding the case to state court in light of the stipulation. (Order of Remand to State Ct. dated Feb. 5, 2021). The Clerk of Court thereafter sent a certified copy of the remand order to the Kings County Supreme Court, and this federal case was closed that same day. (*Id.*).

Ten months later, Ezagui sought—in a filing made by his then counsel Zelman—a pre-motion conference in anticipation of a motion to vacate the stipulation. (Mot. for Pre-Mot. Conference dated Oct. 5, 2021, Dkt. No. 9). Ezagui argued that, in executing the stipulation, he relied upon Corporation Counsel's false and misleading representation that it represented Officer McCann. (*Id.* at 3). According to him, as a result, the rule of unanimity—which requires that all defendants consent to removal—was violated. (*Id.*). Ezagui also indicated that he continued to prosecute the case against Defendants in state court, including by moving for default judgment against

2

McCann.  (*Id.* at 2).  Defendants' opposition argued that Corporation Counsel did represent McCann for the purposes of effectuating removal, and the office eventually represented—and continues to represent—McCann for all purposes.  (Letter in Opp'n to Pl.'s Req. for Pre-Mot. Conference, Dkt. No. 10 at 2).  The Court ordered Plaintiff to show cause why this Court had jurisdiction over this closed case, particularly in light of the pending state court proceeding.  (Order to Show Cause dated Jan. 12, 2022).  The parties filed their responses to the Court's order and, on May 13, 2022, Ezagui withdrew his motion.  (Letter, Dkt. No. 16).

Several months later, on August 22, 2022, Ezagui, through new counsel, filed the present motion to vacate the stipulation pursuant to Federal Rule 60(b)(6).  (Mot. to Vacate Stipulation dated Aug. 22, 2022 ("Mot. to Vacate"), Dkt. No. 17).  The Court granted a 60-day extension of time for Defendants to file their response, but an opposition was not filed.  (Order dated Sept. 21, 2022).

## DISCUSSION

There is a threshold jurisdictional question that the Court briefly addresses. "[W]hether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercise that jurisdiction." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).  This case was originally removed to federal court on the basis of federal question jurisdiction.  *See* 28 U.S.C. § 1441(a); (Notice of Removal ¶ 5). Following the stipulation dismissing the federal claims with prejudice, the Court remanded the action to state court.  (Order of Remand to State Ct. dated Feb. 5, 2021). Though the Court could have exercised supplemental jurisdiction over any state claims, in light of the stipulation it chose not to do so.  (*See id.*); *Carlsbad Tech.*, 556 U.S. at 639

("With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise."). Said differently, the case left federal court in favor of state court not because of the absence of subject matter jurisdiction, but because the stipulation made clear the Court should not exercise federal jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Duffy v. Absecon Police Dep't*, No. 17-CV-1117, 2019 WL 5265322, at *2 (D.N.J. Oct. 17, 2019) (holding that, where removal is based on 28 U.S.C. § 1331, plaintiff's voluntary dismissal of his federal claims by stipulation to remand "provides a basis for the [c]ourt to consider whether, in its discretion, it should continue to exercise subject matter jurisdiction over [p]laintiff's state law claims under 28 U.S.C. § 1367"). This decision is "purely discretionary." *Carlsbad Tech.*, 556 U.S. at 639; *Warren v. Mariner Fin., LLC*, No. 20-CV-4193, 2021 WL 5232253, at *4 n.3 (2d Cir. Nov. 10, 2021). "[A]n exercise of discretion under § 1367 cannot be characterized as a subject matter jurisdiction remand[.]" *Dirauf v. Berger*, 57 F.4th 101, 106 (3d Cir. 2022).

As a result, although the parties are now litigating in state court, this Court still has jurisdiction to evaluate the terms on which it left this federal forum. *E.g.*, *id.* (affirming district court's decision to decide Rule 60 motion following remand based on declination of supplemental jurisdiction).

As such, the Court turns to the merits of the motion and recommends that it be denied. Ezagui argues that his former counsel, Zelman, lacked authority to withdraw his federal § 1983 claims, and relief from the judgment—which dismissed these claims with prejudice and remanded the state claims—is appropriate under Federal Rule 60(b)(6). (Mem. of Law in Supp. of Mot. to Vacate ("Mem. of Law"), attached as Ex. 21 to Mot. to Vacate, at 6–12, 16). In support of his motion, Ezagui submitted transcripts of recorded

4

telephone calls and text message and email correspondence with Zelman allegedly demonstrating his lack of knowledge or consent of Zelman's decision to enter into the stipulation.  (*See also id.* at 3–6, 11–12).

"Rule 60 regulates the procedures by which a party may obtain relief from a final judgment. . . .  The rule attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done."  11 Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2851 (3d ed. 2022).  Relevant here is subsection 6 of Rule 60(b) which provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  "[T]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices the party has made.  A party remains under a duty to take legal steps to protect his own interests."  Wright & Miller et al., *supra*, § 2864.  Rule 60(b)(6) "is properly invoked only when there are extraordinary circumstances justifying relief, [and] when the judgment may work an extreme and undue hardship."  *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) (citations omitted).

Inherent in the limitation "any other reason," Rule 60(b)(6) relief is available only when "the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule."  *Id.*; *United States v. Cirami*, 563 F.2d 26, 35 (2d Cir. 1977) (finding vacatur under Rule 60(b)(6) appropriate where there is a "truly extraordinary turn of events not covered by the first five clauses of the rule" resulting in "substantial injustice").  And, thus, relief may not be based upon the grounds set out in subsection (b)(1)—"mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).

5

"Relief from counsel's error is normally sought pursuant to 60(b)(1)," *Nemaizer*, 793 F.2d at 62, making it ineligible for 60(b)(6) relief. Couched as a claim of error, Ezagui's claim would fail. Rule 60(b)(1) relief is limited to one year following entry of the challenged judgment. Fed. R. Civ. P. 60(c)(1). The judgment here was entered in February 2021, and any 60(b)(1) motion would have been timely only if filed by February 2022. Ezagui's motion, however, was filed in August 2022.

Given the time bar, Ezagui attempts to shoehorn his claim—that his counsel lacked the authority to dismiss his federal claims—into Rule 60(b)(6). It does not fit. The Court of Appeals has indicated that a claim like Ezagui's—that his attorney lacked authority to settle—falls within 60(b)(1), like most claims of attorney error. Ezagui, therefore, has no recourse under 60(b)(6).

In *Nemaizer*, the plaintiff first brought an ERISA claim against an individual for delinquent benefit payments, along with a claim under the New York State Labor Law. *Nemaizer*, 793 F.2d at 60. After the defendant removed the case to federal court, he moved to dismiss arguing that the ERISA claim could not proceed against him, a non-signatory to the collective bargaining agreement, and the state law claim was preempted. *Id.* The parties, in recognition of the merits of that motion, agreed to a stipulation, dismissing the case with prejudice. *Id.* Six months later, the same plaintiff brought another lawsuit against the same defendant also alleging a violation of ERISA, and asserting that the stipulation in the prior lawsuit was only intended to cover the state law claim. The plaintiff argued that the stipulation of dismissal was broader than he intended. *Id.* The District Court agreed that the stipulation was based on a "genuine misunderstanding," and granted the motion to vacate. *Id.* The Court of Appeals

6

reversed and dismissed the second suit as barred by *res judicata*, finding that a "good faith mistake" was insufficient to obtain Rule 60(b) relief. *Id.* at 60, 62.

In so doing, the Court suggested that a lack of authority is a Rule 60(b)(1) claim—"[E]ven if responsibility rests with plaintiff's prior counsel, Rule 60(b)(1) does not provide an avenue for relief. There is no allegation, for example, that former counsel lacked authority to enter in the stipulation." *Nemaizer*, 793 F.2d at 62. In other words, had the plaintiff alleged his lawyer acted without his consent, he might have been entitled to Rule 60(b)(1) relief. And the corollary to that conclusion—given the way Rule 60(b) operates—is that an argument that falls within 60(b)(1) would not fall within 60(b)(6).

District Courts have followed the guidance in *Nemaizer*—that is, concluding that attorney authority claims rise and fall under Rule 60(b)(1). *Webb v. City of New York*, No. 08-CV-5145, 2010 WL 3394537, at *3 (E.D.N.Y. Aug. 23, 2010) (acknowledging that an "admission that counsel lacked any authority to either bring this case or to enter into a stipulation dismissing her client's claims with prejudice might well provide a basis for relief from that stipulation" under (b)(1) (citing *Nemaizer*, 793 F.2d at 62)).

More recently, in *Amid v. Chase*, the Court of Appeals reviewed a case similar to the present one. The District Court dismissed a second lawsuit filed by the plaintiff against the defendants on the basis of a stipulation filed in the prior lawsuit between the same parties. 720 F. App'x 6, 8 (2d Cir. 2017). The stipulation dismissed the claims with prejudice. The Second Circuit affirmed. *Id.* at 9. In so doing, it found that the plaintiff's argument for vacating the stipulation—that her lawyer entered into the agreement without her consent—was time barred, because it was requesting Rule 60(b)(1) relief more than a year after judgment was entered. It held:

7

> [A]ssuming *arguendo* that Amid's attorney filed the stipulation without authority . . . if she were to move to vacate the stipulation under Rule 60(b), her motion would be time-barred. Relief from counsel error is generally afforded pursuant to Rule 60(b)(1), *Nemaizer*, 793 F.2d at 62, and a Rule 60(b)(1) motion must be made "no more than a year after the entry of the judgment," Fed R. Civ. P. 60(c)(1).

*Id*. In so doing, though in an unpublished opinion, the Court of Appeals cited to *Nemaizer*, reiterating its statement that attorney authority was treated as attorney error falling within 60(b)(1).

Ezagui fails to grapple with this authority. In a footnote, Ezagui argues Zelman did not make a "mistake" or "act[] inadvertently" but rather "acted intentionally and with reason, but without Ezagui's knowledge or consent." (Mem. of Law at 7 n.2). But disclaiming 60(b)(1) does not make Ezagui's argument cognizable under 60(b)(6). As noted above, the Court of Appeals has characterized a lack of authority as a kind of attorney error; and, other Circuits agree. *See, e.g.*, *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996) ("[T]he kinds of mistakes by a party that may be raised by a Rule 60(b)(1) motion are litigation mistakes that a party could not have protected against, such as the party's counsel acting without authority of the party to that party's detriment."); *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) ("This Court has stated that a Rule 60(b)(1) motion is intended to provide relief in only two situations[,] [including] when a party has made an excusable mistake or an attorney has acted without authority[.]"). Ezagui cannot simply assert the contrary to prevail.

And as for his argument that Rule 60(b)(6) encompasses attorney authority claims, none of the cases he cites support that proposition. In *Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C.*, the District Court did not analyze, let alone conclude, that an attorney authority claim was cognizable under 60(b)(6). No. 10-CV-

8

0261, 2011 WL 2532914, at *5–*6 (E.D.N.Y. June 23, 2011), *aff'd*, 457 F. App'x 40, 44 (2d Cir. 2012).  In fact, it cited to the same portion of *Nemaizer* where the Court of Appeals held the argument fell within 60(b)(1).  *Id.*  Its only reference to 60(b)(6) was in a parenthetical citing *Harris v. United States*, where the Second Circuit said that the only attorney-competence claims cognizable under (b)(6) were those that "amount to the abandonment of the client's case altogether, either through physical disappearance[,] or constructive disappearance."  *Id.* at *5 (citing *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004) (citations omitted)).  The Court of Appeals' decision in *Palm Beach* serves Ezagui no better; the Court does not even address Rule 60.

Ezagui then cites to *Webb*, but overlooks the fact that *Webb* applies *Nemaizer*, as noted above.  And when Ezagui cribs a sentence from *Webb*—the Court's observation "that counsel lacked any authority to either bring this case or to enter into a stipulation dismissing her client's claims with prejudice might well provide a basis for relief from that stipulation"—he conveniently omits that that entire discussion is one about 60(b)(1), and the Court's discussion about 60(b)(6) occurs elsewhere.  (Mem. of Law at 9 (citing *Webb*, 2010 WL 3394537, at *3)).  To say the least, his presentation is misleading.

Finally, Ezagui relies on the Court of Appeals' decision in *Gomez v. City of New York*.  (Mem. of Law at 9).  To be sure, *Gomez* reiterates the principle that a lawyer may not settle or dismiss a client's case without consent.  The decision to dismiss claims, for example, is one that lies with the client and is "not automatically bestowed on retained counsel."  805 F.3d 419, 424 (2d Cir. 2015).  The Court did also say that a plaintiff may be entitled to relief from a stipulation of dismissal his attorney signed without his

9

knowledge or consent where the motion to vacate was filed "[w]ithin days of the stipulation's signing." *Id.* at 424–25. But nothing in the case addresses whether such circumstances were cognizable under 60(b)(6). The subsection makes no appearance in *Gomez*. Instead, the Court of Appeals addressed the more general question of whether the lack of authority of an attorney is a basis to relieve a party from a judgment. *Id.* at 423. There is no dispute about that question here. Rather, the question is what procedural vehicle is appropriate for such an argument, and on that *Gomez* is utterly silent. Thus, Ezagui's attorney authority claim must be brought under Rule 60(b)(1), not (b)(6); and any 60(b)(1) claim is time barred because the present motion has been brought after one year elapsed from entry of judgment.

But even as a Rule 60(b)(6) claim, Ezagui's motion fails.

For one thing, there is no "attorney disappearance," abandonment of a case, or analogous situation present. And that is the minimum requirement for 60(b)(6) relief when a party seeks to distance himself from his attorney's litigation conduct. *Webb*, 2010 WL 3394537, at *4 (quoting *Harris*, 367 F.3d at 81).

This is not such a case. Zelman did not disappear, abandon the case, or otherwise become unavailable. Zelman timely responded to this Court's orders post-dating remand. He maintained contact and communication with his client and answered Ezagui's questions, even if Ezagui did not like the actions taken. (*See* Mem. of Law at 2–5). And importantly, he attempted to vacate the very same stipulation pursuant to Rule 60(b)(3), alleging "it was signed due to a material misrepresentation." (*See* Reply in Supp. of Pl.'s Appl. to Vacate dated Oct. 25, 2021, Dkt. No. 11 at 2; Resp. to Order to Show Cause dated Jan. 26, 2022, Dkt. No. 14 at 3). That suggests two things: (1) Ezagui was satisfied with Zelman's conduct for months after the stipulation was first entered

and did not believe that Zelman had been acting without authority; and (2) the current motion reflects Ezagui's after-the-fact regret over the stipulation, not the circumstances at the time of the stipulation. Indeed, it appears that Ezagui only began to seek out new counsel in the summer of 2022, more than one year after the Court's remand order and after Ezagui's first motion to vacate was filed and withdrawn. (*See* Aff. of Menachem Ezagui in Supp. of Mot. to Vacate ("Ezagui Aff."), attached as Ex. 1 to Mot. to Vacate, ¶¶ 16–22).

Following remand, Zelman has pursued eight state-law claims in a state court action that is ongoing. *Ezagui v. City of New York*, No. 520726/2020 (Sup. Ct. Kings Cnty. Oct. 26, 2020). In that case, Ezagui only changed attorneys in December 2022. *See* Consent to Change Att'y dated Dec. 13, 2022, Dkt. No. 41, *Ezagui v. City of New York*, No. 520726/2020 (Sup. Ct. Kings Cnty.). And prior to that there is not a whisper (at least on the docket) that Zelman was acting without Ezagui's authority. All of this is to suggest that even if Ezagui's motion could be considered under Rule 60(b)(6) instead of (b)(1)—which it cannot—he cannot rebut the presumption that the "attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." *Gomez*, 805 F.3d at 424 (quoting *In re Artha Mgmt., Inc.*, 91 F.3d 326, 329 (2d Cir. 1996)). That is because "[t]he burden of proving that an attorney entered into a settlement agreement without authority is not insubstantial." *United States v. Int'l Brotherhood of Teamsters*, 986 F.2d 15, 20 (2d Cir. 1993).

Furthermore, Rule 60(b)(6) is "properly invoked where there are extraordinary circumstances or where the judgment may work an extreme and undue hardship." *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986) (citations and quotations omitted). Ezagui's papers do not address this inquiry. Instead, all he argues is that the

Defendants would not be prejudiced by litigating the case again in federal court and having the federal claims reinstated, because discovery in state court is in its infancy. (*See* Mem. of Law at 15). The burden is on Ezagui to show that he suffers extreme hardship from not being able to pursue claims in federal court, while left only with state law claims in an ongoing case. In the materials Ezagui submitted, detailing the conversations with his attorney, it appears that Zelman made a strategic decision to dismiss federal claims to avoid federal court and to pursue his client's claims in a more advantageous forum. (Ezagui Aff. ¶ 33 ("I felt, that's my choice to do, okay? And I felt that you would have a better chance at getting a better recovery in state court rather than federal court. . . . That's a choice that the attorney makes.") (quoting Zelman); *id.* ¶ 35 ("[T]he net result of this, I feel, is that it gets you closer to the point where you get money for your case, rather than you're litigating your case for years with a judge that is unpredictable and a jury that is, ya know, from Long Island. It's -- It's a much different system in the federal court than in the state court. I think you have a much better chance of getting a very good recovery and a settlement in state court rather than from federal court[.]") (quoting Zelman)). That, of course, is a litigation judgment, and to the extent he now questions the strategy's wisdom, "Rule 60(b) will not afford . . . relief from the consequences of its litigation strategy." *Socialist Republic of Romania v. Wildenstein & Co. Inc.*, 147 F.R.D. 62, 65 (S.D.N.Y. 1993); *see also Lei v. Haryin Inc.*, No. 16-CV-9018, 2022 WL 17404194, at *4 (S.D.N.Y. Dec. 2, 2022) (denying Rule 60(b)(6) claims based on assertion that state court was less advantageous than federal forum); *DeMarkey v. Greenwich Hosp. Ass'n*, 454 F. Supp. 351, 354 (D. Conn. 1978) ("Absent exceptional and compelling circumstances which are not present here Rule 60(b)(6) relief will not be granted where the moving party made an informed and

intelligent decision to stipulate a dismissal of an action even though such a decision subsequently appears unwise. The plaintiff here made an informed and intelligent decision to discontinue the case in favor of arbitration. She chose her forum, five days of hearings were held, and the arbitrator decided against her. To allow her to return to this Court nearly four years later and repudiate her choice of forum would be an abuse of discretion under Rule 60(b)(6) as well as a violation of the defendants' reliance on the finality of this Court's order." (citations omitted)).[1]

## CONCLUSION

For the reasons described above, the Court therefore respectfully recommends that Ezagui's motion to vacate the stipulation be denied.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision." (quotations omitted)).

---

[1] Had Ezagui argued, for example, that particular remedies or relief available to him under § 1983 are not available under state law, then the Court might have had some basis to infer that Zelman's decision prejudiced Ezagui in a substantial way. But Ezagui has not made such a showing in his motion papers and, without more, the Court cannot conclude that Ezagui will bear an "extreme and undue hardship" if the judgment were to stand.

SO ORDERED.

/s/ *Sanket J. Bulsara*  February 14, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York